**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**IN RE: CHRISTOPHER J. VAZQUEZ,**                     1:22-PF-0002 (GTS)

                  **Respondent.**
_____

**GLENN T. SUDDABY, Chief United States District Judge**

## ORDER TO SHOW CAUSE

Recently the undersigned determined that grounds may exist to enjoin Christopher Vazquez ("Respondent") from filing any future pleadings or documents of any kind (including motions) in this District *pro se* without prior permission of the Chief Judge or his or her designee.

It is well settled that "[a] district court may, in its discretion, impose sanctions against litigants who abuse the judicial process." *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996). Where a litigant persists in the filing of vexatious and frivolous suits, it may be appropriate to place certain limitations on the litigant's future access to the courts. *See Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) (citing *Iwachiw v. New York State Dep't of Motor Vehicles*, 396 F.3d 525, 528 [2d Cir. 2005]); *see also Shafii*, 83 F.3d at 571 ("The filing of repetitive and frivolous suits constitutes the type of abuse for which an injunction forbidding further litigation may be an appropriate sanction."). Before imposing such limitations, the court should consider the following:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the

> litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Iwachiw*, 396 F.3d at 528 (quoting *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 [2d Cir. 1986]).

Here, after carefully reviewing the record, the Court concludes that, unless he shows cause otherwise, Respondent should be enjoined from filing any future pleadings or documents of any kind (including motions) in this District *pro se* without prior permission of the Chief Judge or his or her designee  (except pleadings or documents in an action that is open at the time of the issuance of the Court's anti-filing injunction, until that action is closed).

A review of Respondent's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, within the period of less than one year (between March 24, 2021, and March 4, 2022), he filed five actions in this District pro se: (1) *Vazquez v. Dollar General Corporation*, 1:21-CV-0330 (BKS/CFH); (2) *Vazquez v. Times Union Newspaper*, 1:21-CV-1359 (DNH/CFH); (3) *Vazquez v. Hometown Health Center*, 1:21-CV-1371 (MAD/CFH); (4) *Vazquez v. State of New York*, 1:22-CV-0196 (GTS/CFH); and (5) *Vazquez v. St. Mary's Healthcare*, 1:22-CV-0317 (GTS/TWD).

Four of those five actions have been dismissed for failure to state a claim, lack of subject-matter jurisdiction, and/or failure to comply with filing-fee requirements.  *See Vazquez v. Dollar General Corporation*, 1:21-CV-0330 (BKS/CFH), Memorandum-Decision and Order (N.D.N.Y. filed Sept. 27, 2021) (failure to state a claim); *Vazquez*

*v. Times Union Newspaper*, 1:21-CV-1359 (DNH/CFH), Order on Report & Recommendation (N.D.N.Y. filed Mar. 21, 2022) (subject-matter jurisdiction); *Vazquez v. State of New York*, 1:22-CV-0196 (GTS/CFH), Order Directing Administrative Closure (N.D.N.Y. filed Apr. 7, 2022) (filing-fee requirement);*Vazquez v. St. Mary's Healthcare*, 1:22-CV-0317 (GTS/TWD), Order Directing Administrative Closure (N.D.N.Y. filed Apr. 7, 2022) (filing-fee requirement).

The fifth action was dismissed for failure to comply with filing-fee requirements but then was reopening upon receipt of Respondent's submission of a supplemental motion for leave to proceed in forma pauperis. *Compare Vazquez v. Hometown Health Center*, 1:21-CV-1371 (MAD/CFH), Order Directing Administrative Closure (N.D.N.Y. filed Feb. 28, 2022) *with Vazquez v. Hometown Health Center*, 1:21-CV-1371 (MAD/CFH), Text Order Reopening Case (N.D.N.Y. filed Mar. 1, 2022).[1]

Four of the five actions have been so improper as to call into question Respondent's motive in filing and/or pursuing the actions (and whether he ever had an objective good-faith expectation of prevailing in them).  Furthermore, granted, in only one of these four actions were the defendants burdened with the need to file a motion to dismiss.  See *Vazquez v. Dollar General Corporation*, 1:21-CV-0330 (BKS/CFH), Motion to Dismiss (N.D.N.Y. filed Mar. 30, 2021).  However, in each of the four actions (and indeed the fifth action), the Court (whose judges all have congested dockets) and

---

[1]      Without passing on the pleading sufficiency of this Complaint (which is an issue reserved for the U.S. District Judge and U.S. Magistrate Judge assigned to the case), the Court notes that the Complaint consists of a one-and-one-half page handwritten document containing six sentences, without any caption, statement of jurisdiction or statement of the parties. *Vazquez v. Hometown Health Center*, 1:21-CV-1371 (MAD/CFH), Complaint (N.D.N.Y. filed Dec. 22, 2021).

its personnel were burdened with the need to manage and dispose of the actions.

Alone, these facts might not ordinarily trigger the supervisory duties of the Chief Judge of this District. However, here, these facts do not reflect the scope and degree of Respondent's abuse of the judicial process. This is because, over the period of nine-and-a-half months, Respondent has become increasingly abusive when communicating with Court staff.

For example, in *Vazquez v. Dollar General Corporation*, 1:21-CV-0330 (BKS/CFH), staff notes on the docket sheet indicate as follows: on 06/17/2021, Respondent called the Clerk's Office "slightly irritated"; on 08/30/2021, Respondent called the Clerk's Office "quite agitated"; on 09/14/2021, Respondent visited the Clerk's Office "very disappointed" and "want[ing] this matter to be expedited"; on 11/22/2021, Respondent called the Clerk's Office "very angry, irate and upset," "us[ing] vulgar language," and "demand[ing] to be at the table with the court and defendants"; on 03/09/2022, Respondent sent nine emails to the Clerk's Office "demand[ing] an in person hearing in this case," and "demanding to see his daughter";[2] on 03/10/2022, Respondent sent an email to the Clerk's Office "app[arently] related to a Schenectady County Family Court matter"; on 03/11/2022, Respondent sent six emails to the Clerk's Office "inquiring as to why he is receiving an invoice for child support," "request[ing] an oral hearing in this case," "demand[ing] oral discussion," and "seeking to enter into a settlement agreement"; on 03/13/2022, Respondent sent two emails to

---

[2] These emails (and all subsequently described emails from Respondent) were sent to "an email [address] used by the Clerk's Office to send courtesy copies of forms/links to procedures to pro se litigants" (ERequests@nynd.uscourts.gov).

the Clerk's Office "regarding [a] Family Court Matter"; on 03/14/2022, Respondent sent two emails to the Clerk's Office "claim]ing] that Legal Aid shorted him on his supplemental rental income and demanding that Legal Aid correct it," and "inform[ing] the Court that he is suing 'The United Auto Supply Company' because they fired him";[3] on 03/15/2022, Respondent called the Clerk's Office "want[ing] to speak to [the Clerk of Court, John M. Domurad]" so that "he knows who the hell the sue next" and subsequently "hung up"; on 03/15/2022, Respondent again called the Clerk's Office "very upset" that the undersigned "seemingly did not have to answer to the President or Congress when implementing [local] rules," and saying, "This is what the f*** Im talking about. This is f****** ridiculous. . . . This is b***s****";[4] on 03/15/2022, Respondent called the Clerk's Office a third time, asking, "Can I take an oath to bypass a rule[?]"; on 03/17/2022, Respondent sent an email to the Clerk's Office "directed to . . . the Ogletree Law Firm" and "seek[ing] resolution of this case which is closed and has an appeal pending"; on 03/18/2022, Respondent called the Clerk's Office "asking about . . . case 1:21-cv-137" and "about [case] 1:21-cv-1359," and "remark[ing] that he would deal with that case in Albany Supreme Court" (albeit respectfully in this particular call); on 03/18/2022, Respondent again called the Clerk's Office "asking about . . . case 1:22-cv-196"; and on 04/12/2022, Respondent sent an

---

[3]    After its receipt of these two emails, the Clerk's Office sent Respondent an email advising him that it "does not accept documents for filing via email and that all documents must be filed in paper format through the mail or in person."

[4]    The Court notes that, according to email communications from the Clerk's Office, Clerk of Court John Domurad has spoken to Respondent at least three times, and the Court Services Administrator has spoken to Respondent multiple times.

email to the Clerk's Office "directed to 4th Judicial District, . . . Schenectady Family Court . . . regarding a Family Court matter."

Moreover, in *Vazquez v. Hometown Health Center*, 1:21-CV-1371 (MAD/CFH), staff notes on the docket sheet indicate as follows: on 03/24/2022, Respondent called the Clerk's Office "asking for [the] status on this case"; on 03/24/2022, Respondent sent an email to the Clerk's Office asking, "Where do we stand on my Hometown Health matter"; on 03/30/2022 and 03/31/2022, Respondent sent three emails to the Clerk's Office purporting to contain a "second healthcare lawsuit" and stating that he "need[ed] both of these to be addressed asap"; and on 04/01/2022, Respondent called the Clerk's Office "requesting to speak to [the Clerk of Court] Mr. Domurad," stating that "the wait is unacceptable," and (although he did not use any vulgar language) "was rude, pushy[, and] reiterated his view of not wanting to following rules, formalities or procedure."

The undersigned has carefully considered whether a "no-contact order" (i.e., an Order precluding Respondent from emailing, calling or visiting the Clerk's Office) would, by itself, suffice (without the addition of an anti-filing injunction) to curb his abuses of the judicial process, and has concluded that, alone, such an Order would not suffice, for two reasons.[5]

First, even setting aside Respondent's filing of four improper civil actions pro se

---

[5] This is not to say that such an Order would not be appropriate here. Indeed, the undersigned finds that it would be. <u>Respondent is therefore directed to no longer email, call or visit the Clerk's Office pro se. To the extent Respondent would like to file something with the U.S. District Court for the Northern District of New York pro se (including his Response to this Order to Show Cause), he must do so by mail.</u>

6

in less than one year, he has repeatedly been advised of the impropriety of sending communications to the email address used by the Clerk's Office for outgoing communications (as well as of the impropriety of using abusive and/or vulgar language with Clerk's Office staff), and has repeatedly disregarded that advice. Indeed, he has expressly indicated his intent to not follow the Court's rules and procedures. Under these circumstances, it appears clear that, alone, such a directive from the Chief Judge (for whom Respondent has expressed a certain amount of contempt, incidentally) would be of little use, other than to permit Respondent to further abuse Clerk's Office staff until that abuse is ended.

Second, Respondent's abusive use of the email address of the Clerk's Office has not been limited to inquiries regarding his actions: he has used the email address to attempt to file pieces of paper purporting to constitute pleadings in new civil actions (triggering the perceived duties of Clerk's Office staff under Fed. R. Civ. P. 5[d][4]). Clearly, by itself, a no-contact order would not suffice.

Notwithstanding the overwhelming support for an anti-filing injunction, fairness dictates that Respondent be given notice and an opportunity to be heard. *See Iwachiw*, 396 F.3d at 529. As a result, he shall have fourteen (14) days from the date of this Order to show cause, *in writing*, why he should not be enjoined from filing any future pleadings or documents of any kind (including motions) in this District *pro se* without prior permission of the Chief Judge or his or her designee (except pleadings or documents in an action that is open at the time of the issuance of the Court's anti-filing injunction, until that action is closed).

**ACCORDINGLY**, it is

**ORDERED** that Respondent shall, within **FOURTEEN (14) DAYS** of the date of this Order, show cause, *in writing*, why he should not be enjoined from filing any future pleadings or documents of any kind (including motions) in the Northern District of New York *pro se* without prior permission of the Chief Judge or his or her designee (except pleadings or documents in an action that is open at the time of the issuance of the Court's anti-filing injunction or "Pre-Filing Order," until that action is closed);[6] and it is further

**ORDERED** that, if Respondent does not fully comply with this Order, the Court will issue a subsequent order, without further explanation, permanently so enjoining Respondent; and it is further

**ORDERED** that the Clerk shall provide a copy of this Order to Respondent by certified mail; and it is further

**ORDERED** that Respondent shall no longer email, call or visit the Clerk's Office of the U.S. District Court for the Northern District of New York pro se. To the extent

---

[6] In addition, nothing in the injunction would (1) hinder Respondent's ability to defend himself in any criminal action brought against him, or bring a habeas corpus action, or (2) limit his access as a plaintiff to any court other than the United States District Court for the Northern District of New York. However, the injunction would apply to, among other things, continued filings of documents by Respondent as a *pro se* plaintiff in the following actions: (1) an action opened by him in this Court through the filing of a complaint, a motion, an application, or any other means; (2) an action opened by him in another federal district court and transferred to this Court, when that action clearly should have been venued in this District, *see In re: Leon R. Koziol,* 15-AF-0005, Order, at 2-3 & n.2 (N.D.N.Y. filed Dec. 19, 2019) (Suddaby, C.J.) (collecting cases); and (3) an action opened by him in state court and removed to this Court by any party, when that action was laden with federal claims (especially claims based on grounds previously trodden by Respondent in this Court, and asserted against defendants who had been previously sued by him in this Court on similar grounds), *see In re: Leon R. Koziol,* 15-AF-0005, Order, at 2-5 & nn.3 (N.D.N.Y. filed Dec. 19, 2019) (Suddaby, C.J.) (collecting cases).

<u>Respondent would like to file something with the U.S. District Court for the Northern District of New York pro se (including his Response to this Order to Show Cause), he must do so by mail</u>.

Dated:   May 2, 2022
         Syracuse, New York

*[signature]*
Hon. Glenn T. Suddaby
Chief U.S. District Judge